UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

GARY ARTHUR HOLYOKE,

                              Plaintiff,

   v.                                                        6:23-CV-1557
                                                              (MAD/ATB)

S.S.I., et al.,

                              Defendants.
_____

GARY ARTHUR HOLYOKE, Plaintiff, pro se

ANDREW T. BAXTER, U.S. Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

The Clerk has sent to the court for review a complaint, together with an application to proceed in forma pauperis ("IFP"), filed by pro se plaintiff, Gary Arthur Holyoke. (Dkt. Nos. 1, 2).

**I.**    **IFP Application**

Plaintiff declares in his IFP application that he is unable to pay the filing fee. (Dkt. No. 2). After reviewing his application and supporting documents, this court finds that plaintiff is financially eligible for IFP status.

However, in addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks

1

monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and 28 U.S.C. § 1915. Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldredge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward pro se litigants and must use extreme caution in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint sua sponte even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555).

In addition, Fed. R. Civ. P. 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 does not require detailed factual allegations, it does "demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Houston v. Collerman*, No. 9:16-CV-1009 (BKS/ATB), 2016 WL 6267968, at *2 (N.D.N.Y. Oct. 26, 2016) (quoting *Ashcroft*, 556 U.S. at 678). A pleading that contains allegations that "'are so vague as to fail to give the defendants adequate notice of the claims against them' is subject to dismissal." *Id.* (citing *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009)).

## II.     Relevant Procedural History

Plaintiff is a familiar litigant to this court. On April 4, 2022, he filed a complaint with jury demand against defendants Mohawk Valley Health System ("M.V.H.S.") and Mohawk Valley Community Services ("M.V.C.S."). *See Holyoke v. Mohawk Valley Health System*, Case No. 6:22-CV-316 (MAD/ATB) ("*Holyoke I*"). On November 1, 2022, the Honorable Mae A. D'Agostino ordered that the *Holyoke I* complaint be dismissed without prejudice, but without the opportunity for amendment, based on the court's initial review of the complaint pursuant to 28 U.S.C. § 1915. (*Holyoke I* Dkt. No. 15). Plaintiff appealed Judge D'Agostino's decision, and on October 31, 2023, the Second Circuit affirmed the judgment of the district court. (*Holyoke I* Dkt. No. 31).

On December 12, 2023, plaintiff filed the complaint with jury demand in the instant matter. (Dkt. No. 1) (Complaint ("Compl.")). The facts as alleged in the instant matter bear, at least some, relation to those facts asserted in *Holyoke I*. (Compare

3

*Holyoke I* Dkt. No. 1 *with* Compl.). On December 13, 2023, Judge D'Agostino deemed this matter and *Holyoke I* to be "related." (Dkt. No. 5).

### III. The Complaint

In the caption of his complaint, plaintiff has identified the following defendants: S.S.I., Medicare, I.R.S., the City of Utica, Oneida County, M.V.H.S., and M.V.C.S. (*See generally* Compl.). In the body of his complaint, plaintiff alleges that he is "looking for a place to reside mainly in the skirts of the city of Utica, N.Y. Or a small piece of land in about an [sic] small grove type to put a tiny home to reside in." (Compl. at 3). He states without explanation that his "main problem" is the discrimination between [him] and [his] younger brother . . . who has disabilities[.]" (*Id.*). Plaintiff states his brother cannot "be with" him, because they "would not get along together." (*Id.* at 4). Plaintiff then states that he was "declared a duncell [sic]" in third grade, and that "in the 90's and early 2000's [he] just had a bit of depression and ups and downs of mood because of being bored." (*Id.*). Plaintiff describes how he thereafter took up photography and obtained employment "doing surveys[.]" (*Id.* at 5).

Plaintiff's recitation becomes even less clear at this point. He states that during the years 2014 through 2017, doctors were "calling [him] into the hospital," and he was "back and forth" between "St. Elizabeths and St. Lukes [sic] where the doctors kept mixing many of [his] meds between inpatient and outpatient services [ ] and kept trying to routine [him] while just not offering much help." (*Id.* at 6). Plaintiff states that he spent his time "fishing with [his] father to relax and go places to do photography." (*Id.*).

Plaintiff alleges that he eventually created a photography business. (*Id.* at 7). He moved into a "first floor flat" in 2014, however in 2019 he was evicted. (*Id.*). Plaintiff claims that although "Daniel from Home Health Network said she would help" plaintiff, but she was actually "on [the landlord's] side" and "tried to rush [plaintiff] after [he] settled down and made it into a semi comfortable ba[ch]elor pad where [he] was sorta [sic] at ease." (*Id.* at 7-8).

The complaint thereafter becomes even more difficult to follow. Plaintiff lists a myriad of seemingly unrelated state statutes. (*Id.* at 8-10). He states that he cannot live with his immediate family. (*Id.* at 9). He alleges, without any coherent explanation, that the "total cost" for the years 2014 through 2019 with his purported landlord is approximately $108,000. (*Id.* at 9-10). Then, plaintiff cites to an agreement with his "ex girlfriend" at a restaurant, and states that he is "still wondering about copies of parental rights paperwork so this great mishap doesn't happen again." (*Id.* at 11). He states that "all the caseworkers . . . totally refused to talk about or help in any support for" plaintiff when he attempted to "talk about photography[,]" in his effort to earn a living and obtain housing. (*Id.*).

Plaintiff alleges that "while staying at Globe Mills Loft [apartments]," he "kept seeing cars driving around in figure eights and other pickup trucks that were the same as when he lived in Millgate Meadows that harassed [him.]" (*Id.* at 13). Plaintiff alleges that, under "certain circumstances[,]" this "may constitute a class E Felony[.]" (*Id.* at 13-14). Plaintiff then states that he is "looking for an understanding" as to what he needs "in order to stabilize a business . . . and trying to find partnership of ," but is

"being sent in wrong directions[.]" (*Id.* at 14). He references this "offense" to be considered a "form[ ] of torture, humiliation or degradation." (*Id.* at 14-15).

Plaintiff cites to the Public Health Service Act, Federal Tort Claims Act, and the Eighth Amendment as giving rise to his federal causes of action. (*Id.* at 15-16). He states, without coherency, that "assertive community team and case managers" committed "[per]jury on record[,]" and cost him $36,000 "from [his] income for the past three years and one step backwards to 17 Glod Ave[.] would be about $48,000 dollars . . . and personal property." (*Id.* at 16).

As relief, plaintiff purports to seek $750,000.00 in damages "that would cap three branches of bank accounts." (*Id.* at 17). Plaintiff appears to assert that such monetary relief would cover his purchase of property "where he could have a second story flat and a gallery on the first (ground floor) in order to purchase some of [his] own artwork." (*Id.*).

## IV. Discussion

### A. Legal Standards

#### 1. Section 1983

A claim for relief under 42 U.S.C. § 1983 must allege facts showing that the defendant acted under the color of a state "statute, ordinance, regulation, custom or usage." 42 U.S.C. § 1983. Thus, to state a claim under § 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." *See West v. Atkins*, 487 U.S. 42, 48-49 (1988). Private parties are

generally not state actors and are therefore not usually liable under Section 1983. *Sykes v. Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties. . . .") (internal quotation marks and citation omitted).

While private individuals are not state actors, such individuals can be liable under Section 1983 if they acted either "jointly" or "in conspiracy" with a state actor to deprive the plaintiff of a constitutional right. *Stewart v. Victoria's Secret Stores, LLC*, 851 F. Supp. 2d 442, 445 (E.D.N.Y. 2012); *see also Betts v. Shearman*, 751 F.3d 78, 84 n.1 (2d Cir. 2014). However, "[a] merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a Section 1983 claim against the private entity."

For the purposes of section 1983, the actions of a nominally private entity are attributable to the state when: "(1) the entity acts pursuant to the 'coercive power' of the state or is 'controlled' by the state ('the compulsion test'); (2) when the state provides 'significant encouragement' to the entity, the entity is a 'willful participant in joint activity with the [s]tate,' or the entity's functions are 'entwined' with state policies ('the joint action test' or 'close nexus test'); or (3) when the entity 'has been delegated a public function by the [s]tate,' ('the public function test')." *Caballero v. Shayna*, No. 18-CV-1627, 2019 WL 2491717, at *3 (E.D.N.Y. June 14, 2019) (citing *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008). "The

7

fundamental question under each test is whether the private entity's challenged actions are 'fairly attributable' to the state." *Id.* (quoting *Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012)).

Section 1983 "only provides redress for federal statutory and constitutional violations perpetrated under color of state law." *Nghiem v. U.S. Dep't of Veterans Affs.*, 451 F. Supp. 2d 599, 605 (S.D.N.Y. 2006) (emphasis in original), *aff'd*, 323 F. App'x 16 (2d Cir. 2009). "Actions of the federal government or its officers are exempt from the proscriptions of § 1983." *Id.* (collecting cases).

### 2. Municipal Liability

A municipality may only be named as a defendant in certain circumstances. In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the Supreme Court outlined the limited circumstances under which a municipality may be liable under Section 1983. A municipality may not be held liable solely because it employs a tortfeasor. *LaVertu v. Town of Huntington*, No. 13-CV-4378, 2014 WL 2475566, at *3 (E.D.N.Y. Apr. 4, 2014) (citing inter alia *Los Angeles County, Cal. v. Humphries*, 562 U.S. 29, 35 (2010)), *report recommendation adopted in relevant part*, 2014 WL 2506217 (E.D.N.Y. June 2, 2014). Only when the municipality, through the execution of its policies, actually deprives an individual of his constitutional rights, is it liable for the injury. *Monell*, 436 U.S. at 694.

"The existence of a municipal policy that gives rise to *Monell* liability can be established in four ways: (1) a formal policy endorsed by the municipality; (2) actions directed by the government's 'authorized decisionmakers' or 'those who establish

governmental policy;' (3) a persistent and widespread practice that amounts to a custom of which policymakers must have been aware; or (4) a constitutional violation resulting from policymakers' failure to train municipal employees[.]" *Deferio v. City of Syracuse*, 770 F. App'x 587, 590 (2d Cir. 2019) (cleaned up). "Once a plaintiff has demonstrated the existence of a municipal policy, a plaintiff must then establish a causal connection, or an 'affirmative link,' between the policy and the deprivation of his constitutional rights." *Id.* (citing *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985)); *see also Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997) (holding that plaintiff must "demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged").

A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train. *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 822-823 (1985)) ("[A] 'policy' of 'inadequate training' " is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell*"). To satisfy the statute, the municipality's "failure to train its employees in a relevant respect must amount to " 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.' " " *Id.* (quoting *Canton v. Harris*, 489 U.S. 378, 388 (1989)). "Only then 'can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983.' " *Id.* (quoting *Canton*, 489 U.S. at 389).

9

**B.     Analysis**

Turning first to jurisdictional issues,[1] it does not appear that the court has subject matter jurisdiction over several of the named defendants in the complaint. M.V.H.S. is an organization comprised of numerous privately owned healthcare entities, including hospitals, primary care facilities, and urgent care centers.[2] As this court explained in *Holyoke I*, wherein plaintiff also attempted to assert a section 1983 claim against the same defendant, M.V.H.S. is not a state actor for purposes of the statute. *Holyoke v. Mohawk Valley Health Sys.,* No. 6:22-CV-316 (MAD/ATB), 2022 WL 1102414, at *3 (N.D.N.Y. Apr. 13, 2022), *report and recommendation adopted*, 2022 WL 16570433 (N.D.N.Y. Nov. 1, 2022), *aff'd*, No. 22-2771, 2023 WL 6342807 (2d Cir. Sept. 29, 2023); *see also Thomas v. Mohawk Valley Health Sys.,* No. 6:20-CV-01347 (BKS/ML), 2020 WL 6504634, at *6 (N.D.N.Y. Nov. 5, 2020) (finding that defendant Mohawk Valley Health System was a private institution for purposes of section 1983 claim, despite allegation that it received funding from the state and federal governments). Because plaintiff has put forth no additional facts suggesting that, at any point, M.V.H.S. acted under color of state law, plaintiff cannot sustain a section 1983 claim against this named defendant.

---

[1] "The Court considers the jurisdictional issues first, because a dismissal for lack of jurisdiction renders all other claims moot." *Strunk v. New York*, No. 1:19-CV-202, 2019 WL 5788560, at *5 (N.D.N.Y. Nov. 6, 2019) (quoting *Cassano v. Altshuler*, 186 F. Supp. 3d 318, 320 (S.D.N.Y. 2016) (citation omitted)); *see also Saleh v. Holder,* 84 F. Supp. 3d 135, 137-38 (E.D.N.Y. 2014) ("Subject matter jurisdiction is a threshold issue . . . .").

[2] *See* https://www.mvhealthsystem.org/about (last visited December 27, 2023).

Plaintiff is also suing "M.V.C.S.," which he has previously referred to as Mohawk Valley Community Services, an entity which this court understands to offer counseling and mental health services in the Oneida county region. Based on plaintiff's allegations, there is some ambiguity about the identity of this defendant, for purposes of assessing state action. As in *Holyoke I*, however, plaintiff has not alleged that this defendant was acting under color of state law. In fact, plaintiff does not mention this defendant at all throughout the body of his compliant. To the extent that M.V.C.S. may be an extension of the New York State Office of Mental Health, or any other state agency, it would be protected by the Eleventh Amendment, which bars federal suits against state governments by a state's own citizens. *Capers v. Kirby Forensic Psychiatric Center*, No. 13-CV-6953, 2016 WL 817452, at *1 (S.D.N.Y. Feb. 25, 2016); *Dimps v. New York State Office of Mental Health*, 777 F. Supp. 2d 659, 661 (S.D.N.Y. 2011) (concluding that, as an agency of the State of New York, OMH is an "arm[ ] of the state entitled to sovereign immunity.") (citation omitted). For all these reasons, the complaint should be dismissed against M.V.C.S. for lack of subject matter jurisdiction.

Plaintiff has also named several federal entities and/or programs as defendants, including the I.R.S., S.S.I., and Medicare. Notably, these defendants are not mentioned anywhere in the body of the complaint. Even if plaintiff had plausibly alleged any claims against these defendants (or, perhaps, claims for the benefits identified), they are barred by the principle of sovereign immunity. It is well-settled that the United States, its agencies, and federal officers in their official capacity, have sovereign immunity

from suit and can only be sued with their consent and under whatever terms Congress may impose. *Robinson v. Overseas Mil. Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994) ("Because an action against a federal agency or federal officers in their official capacities is essentially a suit against the United States, such suits are also barred under the doctrine of sovereign immunity, unless such immunity is waived."); *see Celauro v. United States IRS*, 411 F. Supp. 2d 257, 267 (E.D.N.Y. 2006), *aff'd*, 214 F. App'x 95 (2d Cir. 2007) ("Congress has not specifically authorized suit against the IRS. Therefore, it is not a suable entity."); *Narayanan v. Garland*, No. 22-CV-5661, 2023 WL 6307872, at *4 (E.D.N.Y. Sept. 28, 2023) ("[T]o the extent that Narayanan seeks money damages for the denial of his March 2018 SSI application, sovereign immunity bars that claim."). "Absent an unequivocally expressed statutory waiver, the United States, its agencies, and its employees (when functioning in their official capacities) are immune from suit based on the principle of sovereign immunity." *Vidurek v. Koskinen*, 789 F. App'x 889, 892-93 (2d Cir. 2019) (citing *Cnty. of Suffolk v. Sebelius*, 605 F.3d 135, 140 (2d Cir. 2010)). Plaintiff has not alleged any statutory waiver under which these defendants could be held liable in this court, and thus the complaint should be dismissed as against them.

Accordingly, the only named defendants over which this court might have subject matter jurisdiction are the City of Utica and Oneida County. In any event, any claims purportedly asserted against these defendants are subject to dismissal, due to the complaint's complete failure to meet the notice pleading requirements of Rule 8. The only reference to the city of Utica is plaintiff's allegation that he is "looking for a place

to reside mainly in the skirts of the city of Utica, N.Y." (Compl. at 3). Plaintiff does not specifically reference Oneida County anywhere throughout the body of his complaint.³ Moreover, nowhere in the complaint does plaintiff coherently describe what purported policy, practice or custom of these defendants has given rise to his federal claims. This alone is grounds for dismissal. *See Morgan v. City of Utica, New York,* No. 6:20-CV-1424 (MAD/ML), 2021 WL 2036680, at *2 (N.D.N.Y. May 21, 2021) (dismissing section 1983 claim against defendant municipality where plaintiff makes no meaningful reference to defendant throughout the complaint, and fails to allege any actionable policy or custom); *Crichlow v. Annucci,* 18-CV-3222, 2021 WL 5234522, at *2 (S.D.N.Y. Nov. 10, 2021) (dismissing, for failure to state a claim upon which relief may be granted, those claims against defendants who were identified in the caption of the third amended complaint but, "the Court [wa]s unable to find reference to them anywhere else in the pleading."); *Joseph v. Annucci,* 18-CV-7197, 2020 WL 409744, at *4 (S.D.N.Y. Jan. 23, 2020) (dismissing claims against defendants that were "named in the caption only" where "[t]he body of the Complaint does not contain any factual allegations naming them, or indicating that they violated the law or injured Plaintiff in some manner.").

Furthermore, plaintiff has failed to plausibly allege the violation of his constitutional rights by any actor, whether a named defendant or otherwise. In the context of section 1983 municipal liability, "the presence of an underlying

---

³ Plaintiff has attached as exhibits to his complaint various documents concerning his receipt of temporary housing assistance from the Oneida County Department of Social Services. (Dkt. No. 1-1 at 1-5). These documents do not, on their own, establish a cause of action against Oneida County.

13

constitutional violation remains a 'required predicate' even if the plaintiff elects not to name the directly responsible official(s) as defendants in the suit." *Carter v. Broome Cnty.*, 394 F. Supp. 3d 228, 239 (N.D.N.Y. 2019) (citing inter alia *Askins v. Doe No. 1*, 727 F.3d 248, 253 (2d Cir. 2013) ("In fact, the plaintiff need not sue the individual tortfeasors at all, but may proceed solely against the municipality.")). Thus, "[e]stablishing the liability of the municipality requires a showing that the plaintiff suffered a tort in violation of federal law committed by the municipal actors and, in addition, that their commission of the tort resulted from a custom or policy of the municipality." *Askins v. Doe No. 1*, 727 F.3d 248, 253 (2d Cir. 2013) (citing *Monell*, 436 U.S. at 690-91). Because plaintiff has failed to allege both an underlying constitutional violation and the applicable custom or policy from which any purported violation stemmed, his complaint must be dismissed as against the City of Utica and Oneida County.

## V.   Opportunity to Amend

Generally, before the court dismisses a pro se complaint or any part of the complaint sua sponte, the court should afford the plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

With respect to defendants M.V.H.S., M.V.C.S., Medicare, S.S.I., and I.R.S., the court is recommending dismissal of the complaint for lack of subject matter jurisdiction. Thus, any dismissal must be without prejudice. *Hollander v. Garrett*, 710 F. App'x 35, 36 (2d Cir. 2018) ("[D]ismissal for subject matter jurisdiction must be without prejudice."). However, this court has serious doubts about whether plaintiff can amend to assert any form of federal jurisdiction over these defendants, based on the issues that plaintiff describes in his complaint. Moreover, plaintiff has not advanced any jurisdictional bases, statutory or otherwise, that would constitute a waiver of certain defendants' sovereign immunity from suit. As there appears no basis for plaintiff to raise his claims against these defendants in federal court, the court should not allow plaintiff to amend, notwithstanding a dismissal without prejudice. Because lack of subject matter jurisdiction is a substantive defect, *Deul v. Dalton*, No. 1:11-CV-0637(GTS/RFT), 2012 WL 235523, at *8 n.19 (N.D.N.Y. Jan. 25, 2012), the court recommends dismissal without leave to amend as to these defendants.

With respect to defendants City of Utica and Oneida County, while skeptical, this court is constrained to recommend affording the pro se plaintiff an opportunity to amend his complaint. *See Abbas v. Dixon,* 480 F.3d 636, 639 (2d Cir. 2007) (Finding that sua sponte dismissals by the court pursuant to sections 1915 and 1915A "must" accord the plaintiff an opportunity to amend the complaint "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim."); *Mojias v. Johnson*, 351 F.3d 606, 610-11 (2d Cir. 2003) ("[U]nless it is unmistakably clear that the court lacks jurisdiction, or that the complaint

15

lacks merit or is otherwise defective, we believe it is bad practice for a district court to dismiss without affording a plaintiff the opportunity to be heard in opposition.") (quoting *Snider v. Melindez*, 199 F.3d 108, 113 (2d Cir. 1999)). Thus, the court recommends granting plaintiff the limited opportunity to amend his complaint to allege, if he can, that he suffered an underlying tort in violation of federal law committed by an individual municipal actor or actors, and that that their commission of the tort resulted from a custom or policy of Oneida County or the City of Utica. If the court approves this recommendation and allows plaintiff to submit a proposed amended complaint, plaintiff should be warned that any amended complaint must be a ***complete and separate pleading***. Plaintiff must state all of his claims in the new pleading and may ***not*** incorporate by reference any part of his original complaint.

Plaintiff should also be aware that any opportunity afforded to amend his complaint in order to state a claim for relief is not an invitation to file another frivolous pleading. By this court's count, this is the third complaint plaintiff has filed in the Northern District in the past three years that has been dismissed for jurisdictional defects and/or the failure to state a claim. *See Holyoke I; Holyoke v. Holyoke et al.*, Case No. 6:21-CV-239 (DNH/TWD). Courts have always recognized that they may resort to restrictive measures when responding to vexatious litigants. *In re Martin-Trigona*, 9 F.3d 226, 228-29 (2d Cir. 1993) (noting that the Supreme Court and other Circuits have imposed restrictive measures). The Court has the obligation to protect the public and the efficient administration of justice from individuals who have a history of vexatious and harassing litigation because it imposes needless expense on the parties

16

and an unnecessary burden on the court. *Lau v. Meddaugh*, 229 F.3d 121, 123 (2d Cir. 2000). In this context, courts have accepted the need for permanent injunctions as a result of extraordinary patterns of vexatious, harassing, and baffling litigation practices. *In re Aarismaa*, 233 B.R. 233, 247 (N.D.N.Y. 1999); *Toro v. Depository Trust Co.*, No. 97 Civ. 5383, 1997 WL 752729, at *4 (S.D.N.Y. Dec. 4, 1997) (identifying the All Writs Act as a legal basis to impose sanctions and enjoin a plaintiff who abuses the judicial process).

Under the All Writs Act, 28 U.S.C. § 1651, a court may sanction a vexatious litigant who abuses the judicial process by enjoining him from pursuing future litigation without leave of the court. *Malley v. New York City Bd. of Educ.*, 112 F.3d 69, 69-70 (2d Cir. 1997); *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 250 (2d Cir. 2004). An enjoinder may be permanent or may impose the less drastic remedy of a "leave to file" requirement. *In re Sassower*, 20 F.3d 42, 44 (2d Cir. 1994) (noting the court's ability to levy a leave to file requirement); *Raffee v. John Doe*, 619 F. Supp. 891 (S.D.N.Y. 1985) (granting a permanent injunction restraining the plaintiff from filing any further actions); *In re Aarismaa*, 233 B.R. at 247 (observing that such "restrictive measure[s] have included foreclosing the filings of pleadings in a particular case or requiring that leave of court first be sought").

Before regulating a truculent and persistent litigant by restricting future access to the court, a court should consider

> (1) the litigant's history of the litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits;
> (2) the litigant's motive in pursuing the litigation, and in particular whether the litigant has a good faith expectation of

> prevailing; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

*Toro v. Depository Trust Co.*, 1997 WL 752729, at *4 (citing S*afir v. U.S. Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986)).

Plaintiff's frivolous filings to date suggest his propensity to engage in the same vexatious and duplicative litigation as described above, which among other things results in an unnecessary burden on the courts. Thus, plaintiff should be cautioned that further unmerited filings by him, whether in this action or otherwise in this district, may result in a referral to the Chief Judge of the Northern District of New York to issue an Order to Show Cause why a Pre-Filing Order should not be issued against him, enjoining him from filing any future documents in this court as a pro se litigant without leave.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's motion to proceed IFP (Dkt. No. 2) be **GRANTED**,[4] and it is

**RECOMMENDED**, that the district court **DISMISS** plaintiff's complaint (Dkt. No. 1) as against defendants S.S.I., Medicare, I.R.S., M.V.H.S., and M.V.C.S., without prejudice but without leave to amend, and it is

---

[4] Although his IFP Application has been granted, plaintiff will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

**RECOMMENDED,** that the district court **DISMISS** plaintiff's complaint (Dkt. No. 1) as against defendants City of Utica and Oneida County, without prejudice and with leave to amend, and it is

**RECOMMENDED**, that if the district court adopts this Order and Report-Recommendation, plaintiff be given forty-five (45) days to amend his complaint ONLY with respect to any potential claims against the City of Utica and/or Oneida County, including identifying the underlying actors/constitutional violations giving rise to the purported municipal liability, as discussed above.  If plaintiff does file a proposed amended complaint, plaintiff should be warned that any amended complaint must be a *complete and separate pleading*.  Plaintiff must state all of his claims in the new pleading and may not incorporate by reference any part of his original complaint, and it is

**RECOMMENDED**, that if the district court adopts this Order and Report-Recommendation, and plaintiff files a proposed amended complaint, such proposed amended complaint be returned to me for initial review, and it is

**RECOMMENDED,** that if the district court adopts this Order and Report-Recommendation, and plaintiff does not elect to file an amended complaint within the proposed deadline, or request an extension of time to do so, the Clerk enter judgment dismissing this action without further order of the court, and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Order and Report-Recommendation on plaintiff by regular mail.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Hum. Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: January 2, 2024

Andrew T. Baxter
U.S. Magistrate Judge